UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Walter LeClaire,
        Petitioner,

    v.                                        Civil Action No. 2:09-CV-64

Andrew Pallito, Commissioner,
Vermont Department of Corrections,
        Respondent.[1]

## **REPORT AND RECOMMENDATION**
(Docs. 1 and 6)

Petitioner Walter LeClaire, proceeding *pro se*, has filed a petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  LeClaire was convicted in 2001 of second

degree murder for causing the death of a young child.  His conviction was affirmed on

direct appeal, and his state court post-conviction relief petition was unsuccessful.  He now

comes to this Court with six claims for relief, most of which were raised and rejected in

the state courts.  For the reasons set forth below, I find no basis for granting the writ, and

recommend that the petition be DISMISSED.

## **Factual Background**

The evidence at LeClaire's trial showed that on March 3, 1999, a 911 call was

made from his home reporting that a sixteen-month-old girl was not breathing.   A rescue

team arrived within a minute and a half and confirmed that the child was not breathing,

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Department of Corrections Commissioner Andrew Pallito is automatically substituted for the former Commissioner as the respondent in this case.

had no heartbeat and no electrical activity. A medical expert testified at trial that the child's condition indicated that at least ten minutes had elapsed between her injury and the team's arrival. A CAT scan performed later showed that the child "had endured significant trauma to her brain with enough force to cause bleeding in several areas, dramatic retinal hemorrhages, and retinal detachment. One retinal specialist testified that he had examined thousands of eyes and had never witnessed a more dramatic example of an injury consistent with a baby who had been shaken." *State v. LeClaire*, 175 Vt. 52, 54 (2003).

When LeClaire was interviewed at the hospital, he told police that his dog had knocked the child over and that she had hit her head on a toolbox. One of the treating physicians from the hospital, however, testified at trial that the child's injuries were "not consistent with [LeClaire's] stated mechanism of injury," and were more consistent with "forces seen in moderate to high speed motor vehicle accidents." *Id.* All of the experts who testified at trial agreed that LeClaire's explanation was not consistent with "the multiple injuries to the child's head and the extreme retinal bleeding found in the child's eyes." *Id.* Indeed, as the Vermont Supreme Court noted, "most of the medical experts testified, and none disagreed, that the child's injuries were consistent only with 'shaken infant' or 'shaken impact' syndrome.'" *Id.* at 55.

The child died two days later. An autopsy was performed, during which a small sample of blood was collected. Months after the body was buried, police found hair on a

toolbox in LeClaire's home. LeClaire subsequently moved for the State to "'preserve and provide to the defendant for independent testing hair samples of the decedent.'" *Id.* The trial court denied the motion as moot because no hair samples had been taken from the child's body. The court also noted that "there was 'another way . . . for you to get hair samples [from the victim] if that were required as a last resort,' referring to exhumation." *Id.* The body was never exhumed.

In April 2000, LeClaire moved for dismissal on the ground that the State had failed to collect and preserve exculpatory evidence. At the motion hearing, an expert testified that a mitochondrial DNA test could be performed using the child's blood and the hair sample from the tool box, although the test would not identify the precise source of the hair since "a mother and all of her children have the same mitochondrial DNA." *Id.* at 56. The expert also testified that a microscopic exam of the hair from the toolbox could show whether the hair "was crushed, pulled out or broken." *Id.* Before denying the motion to dismiss, the trial court asked the defense whether there was "any evidence that the hair was there by virtue of anything other than gravity.'" *Id.* The defense "did not offer anything in response at that time." *Id.* Prior to trial, the court granted the State's motion to exclude evidence relating to hair found on the toolbox.

At the conclusion of the multi-day trial, the jury found LeClaire guilty of second degree murder. The conviction called for a minimum sentence of twenty years in prison, and a maximum of life imprisonment as an habitual offender. The trial court issued a life

sentence without parole. In its memorandum of decision, the court cited LeClaire's status as a career offender, his "continued remorselessness," and the fact that he had killed "a helpless child left in his care . . . . The sentence [ ] serves a punitive interest in so far that a deliberate child killing, although unplanned but without the slightest mitigation, is an outrageous act warranting our most severe sanction." (Printed Case of the Appellant at 113).

On appeal, LeClaire set forth five claims of trial court error. He first argued that the trial court should have granted his motion to dismiss because the State had failed to produce a hair sample. He next argued that his constitutional right to present a defense was violated when the court barred him from introducing evidence relating to the hair found on the toolbox.

LeClaire's third claim on appeal was that the trial court should have suppressed certain statements he made to police. LeClaire made the statements while on furlough from prison. His argument was that furlough is equivalent to custody, and that he therefore should have been read his *Miranda* rights prior to any questioning.

LeClaire's fourth argument was that the trial court wrongfully denied him a presentence investigation report. His fifth and final claim was that the trial court should have held an evidentiary hearing on his motion for new trial, in which he claimed inadequate representation. The hearing, he alleged, would have included witnesses who saw counsel consuming alcohol during the trial. The Vermont Supreme Court rejected

each of LeClaire's five arguments and affirmed his conviction.

LeClaire subsequently filed a *pro se* motion for post-conviction relief ("PCR"). Counsel was appointed, and an amended petition claimed ineffective assistance of counsel. One argument raised in the PCR proceeding was that counsel had failed to prepare LeClaire properly for his trial testimony. A hearing was held, at which counsel denied having been under the influence of alcohol. Counsel also provided detailed testimony about his efforts to prepare his client to testify. Although the Superior Court found that counsel was, in fact, frequently under the influence of alcohol during trial, the court denied the petition for failure to show prejudice. The decision was upheld on appeal. *In re LeClaire*, 2009 WL 427336 (Vt. Feb. 4, 2009).

LeClaire filed his § 2254 petition in this Court on March 13, 2009. The respondent concedes that the petition is timely. LeClaire's claims include those raised on direct appeal, as well as several ineffective assistance of counsel claims. LeClaire also argues that his sentence was unconstitutional in that the trial court considered factors at sentencing that were not presented to a jury. The respondent has moved to dismiss.

## Discussion

Most of LeClaire's current claims were raised previously in the Vermont Supreme Court. This Court's power to review decisions coming out of the state's highest court is limited. The standard of review is set forth in 28 U.S.C. § 2254, which provides in relevant part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

"Clearly established Federal law" is comprised of "'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006). A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Williams*, 529 U.S. at 413; *see also Earley*, 451 F.3d at 74.

"[A] federal habeas court may not issue the writ simply because that court

6

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). Also, state court factual determinations receive a presumption of correctness if they are "fairly supported by the record." *Williams v. Bartlett*, 44 F.3d 95, 99 (2d Cir. 1994).

## I.    Fair Trial Claims

The Court first considers LeClaire's claim that he was denied a fair trial because (1) the State failed to collect and preserve a sample of the decedent's hair and (2) the trial court barred the defense from introducing evidence relating to hair on the toolbox.

### A.    Suppression of Evidence

In his direct appeal, LeClaire argued that the State was obligated to produce the decedent's hair once it was requested. For support, he referred the court to *Brady v. Maryland*, 373 U.S. 83 (1963). The Vermont Supreme Court properly noted that a *Brady* violation has three elements: "(1) the State must have suppressed evidence; (2) that evidence must be favorable to the defendant because it is either exculpatory or impeaching; and (3) the defendant was prejudiced as a result." *LeClaire*, 175 Vt. at 56 (citing *Strickler v. Greene*, 527 U.S. 263, 282-82 (1999)).

With respect to the first element, the Vermont Supreme Court found that the evidence in question had not been suppressed since LeClaire himself could have moved

for an exhumation order. *Id.* at 56-57. As to the second element, the state court found that "the defendant has not established that the evidence would be favorable to him." *Id.* at 57.

> Prior to receiving her fatal injury, the child had lived in defendant's home for several weeks. The court noted that her hair could have fallen onto the toolbox at any time during this period. Defendant nevertheless declined to do a microscopic examination of the hair to look for any signs that the hair had been pulled out or broken as opposed to simply resting there as a result of the child living in the home. All of these options, a microscopic exam for trauma to the hair, exhumation, and a mitochondrial DNA test, were available to defendant in advance of his trial. Defendant has not made the requisite showing that the evidence would have been favorable to him, nor did he attempt to do so through any of these options.

*Id.*

In his current motion, LeClaire argues that the State deliberately failed to preserve the hair as evidence. Specifically, he contends that the State knew that the toolbox had hair on it and thus had a duty to collect a sample from the decedent. He further claims that it was the State, and not the defense, that should have exhumed the body in order to obtain a hair sample.

LeClaire does not argue that the Vermont Supreme Court's factual findings were unreasonable, or that its conclusions were contrary to clearly established federal law. In fact, he fails to cite any federal law in this portion of his supporting memorandum. (Doc. 1-1 at 1-2.) In contrast, the Vermont Supreme Court relied upon Second Circuit case law for the proposition that "where the defendant has notice of the essential facts which would allow the defendant to take advantage of any exculpatory evidence, and fails to do

so, the defendant cannot then argue under *Brady* that the prosecution suppressed or failed to disclose such evidence." *Id.* at 56 (citing *United States v. Zackson*, 6 F.3d 911, 918 (2d Cir. 1993)); *see also United States v. Orena*, 145 F.3d 551, 557 n.4 (2d Cir. 1998) ("It is well settled that evidence is not considered to have been suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney either knew, or should have known of the essential facts permitting him to take advantage of that evidence.") (quotation marks omitted). LeClaire does not dispute that he knew of the hair on the toolbox prior to trial, but failed to have the body exhumed. Because this failure was not the fault of the prosecution, the Vermont Supreme Court reasonably found that there was no suppression of evidence under *Brady*.

LeClaire also offers no response to the question of whether test results from a hair sample would have been favorable to his case. As the Vermont Supreme Court stated in its opinion, LeClaire had various ways in which he could have demonstrated favorability, some of which did not involve exhuming the body. Nonetheless, no such showing was attempted.

Given the thorough analysis applied to the *Brady* issue on direct appeal, this Court should find that the Vermont Supreme Court's conclusion was not contrary to clearly established federal law, and that its application of the facts under the *Brady* standard was reasonable. LeClaire's first claim for relief should therefore be DENIED.

B.      Constitutional Right To Present A Defense

9

LeClaire next argues that he was denied his right to present a defense when the trial court excluded evidence of (1) a hair having being found on the toolbox and (2) the State's alleged failure to perform a comparative analysis of the victim's hair. This evidence was excluded as not relevant under Vermont Rule of Evidence 401. The trial court explained its reasoning as follows:

> Absent some indication that the hair reflects traumatic contact, or that the child's head reflects traumatic contact with the toolbox, or that the infant's death could have resulted from striking the box without such traumatic indication appearing, the presence of a single hair upon the toolbox is no more relevant than household dust. Absent any proffer by defendant of injury consistent with head-to-toolbox contact, the failure of the state to conduct comparative analysis of decedent's hair is no more relevant than the state's failure to perform comparative analysis of the decedent's fingerprints or dental records; all for which no apparent reason appeared at the time of investigation or appears now.

*LeClaire*, 175 Vt. at 58.

Recognizing that a trial court has "wide latitude in determining whether to admit or exclude evidence," the Vermont Supreme Court affirmed the ruling. In doing so, the Vermont Supreme Court explicitly acknowledged that LeClaire's constitutional rights to due process and to confront witnesses were involved. *Id.* Ultimately, the appellate court agreed that "the unidentified hair in this case was not relevant without some connection or showing that it makes a material fact 'more probable or less probable than it would be without the evidence.'" *Id.* (quoting Vt. R. Evid. 401).

"[H]abeas corpus relief does not lie for errors of state law, and that necessarily includes erroneous evidentiary rulings." *Hawkins v. Costello*, 460 F.3d 238, 244 (2d Cir.

2006) (internal citation and quotation marks omitted). Rather, "erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner can show that the error deprived [him] of a fundamentally fair trial." *Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) (internal quotation omitted). Nonetheless, "[i]n considering whether the exclusion of evidence violated a criminal defendant's right to present a complete defense, we start with the propriety of the trial court's evidentiary ruling." *Hawkins*, 364 F.3d at 244 (citation omitted). This inquiry helps the habeas court "ascertain whether the [state appellate court] acted within the limits of what is objectively reasonable in finding no constitutional defect existed . . . ." *Jones v. Stinson*, 229 F.3d 112, 120 (2d Cir. 2000).

Vermont Rule of Evidence 401 states that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Vt. R. Evid. 401. In this case, LeClaire offered no evidence to support his claim that a hair on the toolbox made the truth of his story more or less probable. As discussed above, he had several opportunities to show that the hair had some significance, but declined to pursue those lines of investigation. Thus, there is no basis for finding that the trial court erred in its ruling.

When a trial court has not erred, a habeas court must still "consider whether the evidentiary rule the court applied is arbitrary or disproportionate to the purposes it is designed to serve, and we can only find the rule arbitrary or disproportionate if it

infringes on a 'weighty interest of the accused.'" *Hawkins*, 460 F.3d at 245 (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)). To the extent the Constitution is concerned with the application of such rules, it is usually in cases where the result is a "'blanket exclusion' of categories of evidence . . . .."" *Wade v. Mantello*, 333 F.3d 51, 60 (2d Cir. 2003) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *United States v. Scheffer*, 523 U.S. 303, 308 (1998)). For example, in *Chambers v. Mississippi*, the problem was a "rigid application of state evidentiary rules" such that defense counsel could not cross-examine a witness who had repeatedly confessed to the murder for which counsel's client was on trial. 410 U.S. 284, 302 (1973). LeClaire's case is clearly distinguishable, and presents no such constitutional concerns.

Furthermore, there are no grounds for finding that the application of Rule 401 arbitrarily or disproportionately impacted LeClaire's "weighty interests." As the petitioner, he "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997). He cannot meet this burden, as he is able to offer only speculation about effect the Rule 401 ruling had on his case. That speculation comes in the form of a theory about the value of a comparative hair analysis, with no support from any of the sources (mitochondrial DNA testing, etc.) suggested by experts and the trial judge prior to trial. Consequently, the Court should find that the application of Rule 401 did not deny LeClaire his constitutional right to present a defense. *See Wood v. Bartholomew*, 516

U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

## II.    Statements While On Furlough

LeClaire also submits that the trial court should have suppressed certain statements he made to police.  He argues that because he was on furlough from prison when he made the statements, his questioning was custodial and thus entitled him to a reading of his *Miranda* rights.  The trial court denied the motion to suppress, concluding that LeClaire was not in custody at the time of questioning.  The Vermont Supreme Court agreed, holding that LeClaire's "failure to proffer any evidence of restraint of movement or any other evidence associated with a formal arrest falls short of the defendants's burden to prove custody."  *LeClaire*, 175 Vt. at 59.

LeClaire argues that the proper inquiry is whether he subjectively believed that his "freedom of action was curtailed" and whether that belief was objectively reasonable.  (Doc. 1-1 at 3-4.)  The Vermont Supreme Court used essentially this same standard for determining custody: "We must make 'an objective inquiry into the totality of the circumstances to determine if a reasonable person would believe he or she were free to leave or to refuse to answer police questioning.'" *LeClaire*, 175 Vt. at 59 (quoting *State v. Willis*, 145 Vt. 459, 475 (1985)).  This standard is consistent with federal law.  *See Thompson v. Keohane*, 516 U.S. 99, 112 (1995).   The court further noted, however, that "the 'ultimate inquiry is simply whether there is a "formal arrest or restraint on freedom

of movement" of the degree associated with a formal arrest.'" *Id.* (quoting *California v.*
*Beheler*, 463 U.S. 1121, 1125 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495
(1977))).  As the U.S. Supreme Court stated in *Thompson*, "once the scene is set and the
players' lines and actions are reconstructed," the court must then determine whether the
situation was actually custodial.  516 U.S. at 112.

In his state court appeal, LeClaire did not "set the scene" other than to declare that
he was on furlough at the time.  Citing Vermont case law, he argued that furlough is like
prison in that he had to account for his whereabouts twenty-four hours a day, and could
be prosecuted for escape if found in violation.  (Brief of the Appellant at 20-21.)  (citing
*Conway v. Cumming*, 161 Vt. 113, 116-17 (1993)).  The Vermont Supreme Court
disagreed, finding first that "[c]ustody for *Miranda* purposes has been more narrowly
defined than custody in other situations . . . ."  *LeClaire*, 175 Vt. at 59 (citing *Minnesota*
*v. Murphy*, 465 U.S. 420, 431 (1984)).  In *Miranda*, the Supreme Court defined custodial
interrogation as "questioning initiated by law enforcement officers after a person has
been taken into custody or otherwise deprived of his freedom of action in any significant
way."  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  Following *Miranda*, the Supreme
Court held in *Minnesota v. Murphy* that a person on probation, although "subject to a
number of restrictive conditions governing various aspects of his life," was not "in
custody . . . under the narrower standard appropriate in the *Miranda* context . . . since
there was no 'formal arrest or restraint on freedom of movement' of the degree

associated with a formal arrest." 465 U.S. at 431 (quoting *Beheler*, 463 U.S. at 1125).

Because LeClaire offers no facts aside from his furlough status, the state courts were left to determine whether that status alone rendered his questioning *per se* custodial. Applying the narrow standard of custody appropriate for a *Miranda* analysis, the *Murphy* decision rejected a similar claim. *See also Georgison v. Donelli*, 2009 WL 4546349, at *10-*11 (2d Cir. Dec. 7, 2009) ("mere fact of incarceration does not necessarily require that an individual be in the sort of custody that warrants *Miranda* warnings before an interview" about an unrelated incident). LeClaire does not suggest that the Vermont Supreme Court unreasonably determined any facts with regard to his furlough, and cites no U.S. Supreme Court case law to counter the court's decision. This Court should therefore find that the decision in LeClaire's direct appeal did not unreasonably apply federal law, that the outcome of LeClaire's direct appeal on this issue was not contrary to clearly established law "as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

## III    No Presentence Investigation Report

LeClaire next argues that he was wrongfully deprived of a presentence investigation report. Under the Vermont Rules of Criminal Procedure, a trial court may dispense with the report if the defendant, like LeClaire, has two or more felony convictions. Vt. R. Crim. P. 32(c)(1). The Vermont Supreme Court ruled that "[w]hile it may have been a better practice for the court to have ordered a PSI," there was no

violation of the Rules. Furthermore, the court found that LeClaire had failed to show prejudice. *LeClaire*, 175 Vt. at 60.

A "presentence report is a matter of state law that does not implicate federal constitutional rights." *Roberts v. Superintendent, Groveland Correctional Facility*, 26 F. Supp. 2d 684, 686 (S.D.N.Y. 1998); *see also Hampton v. Kelly*, 1990 WL 72616, at *4 (E.D.N.Y. May 17, 1990) (citing *Vines v. Muncy*, 553 F.2d 342, 350 n.26 (4th Cir), *cert. denied*, 434 U.S. 851 (1977)). LeClaire cites only state law in his memorandum (Doc. 1-1 at 5-6), and correspondingly cites no federal statute or Supreme Court precedent for the proposition that he was entitled to a presentence investigation report. This argument therefore fails to support a claim for habeas relief. 28 U.S.C. § 2254(d)(1); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

## IV. Failure To Hold Evidentiary Hearing On Motion For New Trial

LeClaire's last argument on direct appeal was that the trial court should have held an evidentiary hearing on his motion for new trial. The basis for the motion was that LeClaire's attorney, Robert Andres, Esq., failed to provide adequate representation. Specifically, LeClaire claims that "several witnesses saw and would attest to the fact that they saw Attorney Andres consuming alcohol during the lunch breaks throughout trial." (Doc. 1-1 at 7.) The trial court denied the motion, and the Vermont Supreme Court

affirmed, concluding that LeClaire had filed his motion "after the ten-day limit of V. R. Cr. P. had expired." *LeClaire*, 175 Vt. at 61. The court also noted that LeClaire could pursue his inadequate representation claim in an action for post-conviction relief under 13 V.S.A. § 7131. *Id.*

Again, LeClaire does not present a question of federal law for the Court to review. The trial court denied his motion because it was without jurisdiction under Vermont law. *See State v. Grega*, 170 Vt. 573, 575-76 (1999). To rule otherwise would have been reversible error. *Id.* Furthermore, LeClaire has failed to show any prejudice since he was able to bring an ineffective assistance of counsel claim in a post-conviction relief proceeding. *In re LeClaire*, 2009 WL 427336, at *2-*3. The Court should therefore find that the trial court's failure to hold an evidentiary hearing does not warrant habeas corpus relief.

## V. Ineffective Assistance of Counsel

LeClaire raised several claims in his post-conviction relief petition. When the petition was denied, however, he presented only one question to the Vermont Supreme Court: "Did the Superior Court err in its failure to link Attorney Andres' drinking with his failure to adequately prepare Mr. LeClaire for his trial testimony and to find that prejudice resulted?" (Post-Conviction Appeal, Brief of the Appellant at 2.) LeClaire now seeks to bring a series of ineffective assistance claims beyond the single issue raised on appeal. The respondent argues that all claims other than the question of preparation

17

for trial testimony are procedurally barred.  The Court will first address the trial

preparation claim.

### A.      Failure To Prepare LeClaire For Trial Testimony

LeClaire contends that Attorney Andres spoke with him for a total of one and a

half hours prior to trial.  Once trial began, Attorney Andres allegedly gave LeClaire no

notice that he would be testifying until he called his client "to the stand without warning .

. . ."  LeClaire claims that counsel "never even discussed with Petitioner whether he

should or would testify at trial," and "completely failed to prepare him to testify."  (Doc.

1-1 at 8.)

In the post-conviction relief proceeding, the Superior Court held an evidentiary

hearing.  The Vermont Supreme Court summarized the hearing testimony as follows:

> The court held an evidentiary hearing in which petitioner's sister-in-law and
> niece testified that they had smelled alcohol on trial counsel's breath during
> the trial, and that his behavior changed in the afternoon, when he appeared
> to be intoxicated.  Petitioner, in contrast, testified that counsel appeared to
> be intoxicated in the mornings but more alert in the afternoons.  Petitioner
> further testified that counsel had not informed him that he would testify at
> trial until moments before he was called, and did not prepare him for his
> trial testimony or cross-examination.  Petitioner acknowledged at the
> hearing that he had lied to the police, to his attorney, and at trial about the
> cause of the victim's injuries, asserting that they had actually occurred
> earlier in a grocery store when he left his wife alone with the child for a
> few minutes.  He further acknowledged that he had not informed his
> attorney during trial that he was lying, but *would not have altered his story*
> *at trial or testified any differently had he spent more time preparing with*
> *counsel.*
>
> Trial counsel testified as well and denied that he was under the influence of
> alcohol at the trial.  Counsel maintained that he had informed petitioner

about the possibility of testifying at trial, carefully reviewed his testimony with him, and coached him on how to make the best impression on the jury. Counsel also described some of the work that he had performed in preparing for trial, which included consultations with two experts who corroborated the opinions of the State's experts on the cause of the victim's injuries, and the preparation of a video reenactment based on petitioner's version of the incident.

*In re LeClaire*, 2009 WL 427336, at *1-*2 (emphasis added).  LeClaire does not contest this summary of the testimony.

The lower court denied the petition, although it did find that counsel was "'frequently under the influence of alcohol.'" *Id.* at *2.  The court also found that counsel had prepared his client for trial testimony, "'even if perhaps insufficiently.'" *Id.* The court did not expand on this latter conclusion.  Ultimately, the court found a lack of prejudice given LeClaire's statement that, if offered additional preparation, he would not have testified any differently.  *Id.*

The Vermont Supreme Court analyzed the ineffective assistance question under the familiar two-part standard set forth in both Vermont and federal law.  *See In re Koveos*, 178 Vt. 485, 486-87 (2005); *In re Grega*, 175 Vt. 631, 632-33 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).  The standard requires a petitioner to first show that counsel's representation fell below an objective standard of reasonableness.  The petition must then establish that counsel's deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687-88.  In the habeas context, a petitioner must show that "the [state court] applied *Strickland* to the facts of his case in

an objectively unreasonable manner." *Cox v. Donnelly*, 387 F.3d 193, 197 (2d Cir.

2004) (internal quotation marks omitted) (quoting *Bell v. Cone*, 535 U.S. 685, 698-99

(2002)).

In applying the first prong of the test, a court "must indulge a strong presumption

that counsel's conduct falls within the wide range of reasonable professional assistance;

that is, the defendant must overcome the presumption that, under the circumstances, the

challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689

(citation and internal quotation marks omitted).  A court must "make every effort . . . to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

*Id.*; *see also Cox*, 387 F.3d at 198; *United States v. DiTommaso*, 817 F.2d 201, 215 (2d

Cir. 1987).  "The Sixth Amendment guarantees reasonable competence, not perfect

advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8

(2003).

Under the prejudice prong, a habeas petitioner must demonstrate that there is a

"reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Strickland*,  466 U.S. at 694.

In his state court PCR appeal, LeClaire argued that he was "severely prejudiced"

by the fact that counsel was drinking and had left him "wholly unprepared for the cross-

exam." (Brief of the Appellant at 7).  The Vermont Supreme Court rejected this claim,

first holding that "evidence that defense counsel used drugs or alcohol or was intoxicated during trial does not establish ineffective assistance per se, but rather is relevant only insofar as it can be shown that it affected counsel's performance." *In re LeClaire*, 2009 WL 427336, at *2 (citing *Frye v. Lee*, 235 F.3d 897, 907 (4th Cir. 2000); *Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993); *Fowler v. Parratt*, 682 F.2d 746, 750 (8th Cir. 1982); J. Kirchmeier, *Drink, Drugs and Drowsiness: The Constitutional Right to Effective Assistance of Counsel and the Strickland Prejudice Standard*, 75 Neb. L. Rev. 425, 255 (1996)). The court then affirmed the lower court's ruling given LeClaire's admission that his testimony would not have changed with additional preparation. The court also noted that LeClaire had failed to make "any proffer or argument on appeal as to how his testimony would have improved or differed with additional preparation." *Id.* at *3.

In his habeas corpus petition, LeClaire does not address the prejudice prong of the ineffective assistance of counsel standard. He instead argues in conclusory fashion that counsel's failure to adequately prepare him for testimony "bespeaks of pure, egregious, inexcusable[] neglect and undermines the conviction under both the United States and Vermont Constitutions." (Doc. 1-1 at 9). Under *Strickland*, however, a petition must show both objectively unreasonable representation and prejudice. Even if the Court were to assume the former, LeClaire's argument would fail because he has not shown the latter. Accordingly, the Court should deny LeClaire's request for a writ based upon a

claim that counsel failed to adequately prepare him for his trial testimony.

### B. Other Ineffective Assistance Of Counsel Claims

LeClaire's § 2254 petition also argues that counsel was generally ineffective. He asserts that his attorney's drinking problem denied him a fair trial, and that "[m]eeting a client for a total of one half hour outside the courtroom throughout a period of almost two years in which his client was in prison awaiting trial in [sic] inexcusable." (Doc. 1-1 at 9). He also claims that counsel overstated the strength of the defense case, telling LeClaire that "'we got it beat under water.'" *Id.* at 10. Finally, LeClaire accuses counsel of taking the case to trial for purely financial reasons to "be paid for his time," and of failing to act in the best interests of the client. *Id.*

These arguments were not raised before the Vermont Supreme Court. A federal court should not grant a writ of habeas corpus unless the petitioner has exhausted his state court remedies. *See* § 2254(b)(1)(A). To meet the exhaustion requirement, a petitioner must have presented the state courts with "the same claim he urges upon the federal courts," as a way of giving the state court "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275-76 (1971) (internal citations omitted); *see also Jones v. Keane*, 329 F.3d 290, 295 (2d Cir. 2003). In order to completely exhaust state court remedies, a petitioner must have presented his claims "'to the highest court in the pertinent state.'" *Aparicio v. Artuz*, 269 F.3d 78, 89-90 (2d Cir.2001) (quoting *Pesina v. Johnson*, 913 F.2d 53, 54 (2d

Cir. 1990)).

When a claim has not been presented to the state's highest court, a federal court may deem the claim exhausted "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir.1997)). If a claim is procedurally barred in state court, however, it may only be considered on federal habeas review upon a showing of cause and prejudice, or upon a showing that a miscarriage of justice will result if the claim is not reviewed. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Teague v. Lane*, 489 U.S. 288, 298 (1989).

The first step in this analysis is to determine whether LeClaire's unexhausted claims are procedurally barred. If LeClaire were to try to bring his remaining ineffective assistance claims in state court, he would necessarily do so in a collateral proceeding. However, he has already brought one PCR petition. When a petitioner has brought a prior post-conviction review motion in state court, Vermont law dictates that a second such petition may be considered "abuse of the writ." In *In re Laws*, the Vermont Supreme Court held that a petitioner abuses the writ by "raising a claim in a subsequent petition that he could have raised in his first, regardless of whether the failure to raise it earlier stemmed from a deliberate choice." 182 Vt. 66, 76-78; *see also In re Mayer*, 131 Vt. 248, 250-51 (1973). In order to avoid a procedural bar in state court, LeClaire would need to show cause for his failure to raise his claims previously, and actual prejudice

resulting therefrom. *In re Laws*, 182 Vt. at 76-77.

As discussed above, LeClaire presented some of his unexhausted arguments in his initial PCR proceeding, but declined to raise them on appeal. Consequently, LeClaire not only "could have raised" his claims in the first petition, he *did* raise several of his claims and *chose* not to pursue them on appeal. Given these facts, the state courts would surely consider a second petition an abuse of the writ. LeClaire's filings make no effort to show either cause for his failure to raise all of his arguments on appeal, or actual prejudice resulting from that failure. Accordingly, the Court should find that any effort to bring those same claims again in state court a second time would be procedurally barred.

When unexhausted claims are procedurally barred in state court, they may be dismissed by the federal court. *St. Helen v. Senkowski*, 374 F.3d 181, 183 (2d Cir.2004). To avoid a procedural default in federal court, LeClaire must again "show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claims will result in a 'fundamental miscarriage of justice,' *i.e.*, a showing of 'actual innocence.' " *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations omitted); *accord, Schlup v. Delo*, 513 U.S. 298, 324-27 (1995); *see also Messiah v. Duncan*, 435 F.3d 186, 195 (2d Cir. 2006). Use of the fundamental miscarriage of justice exception is "extremely rare," and should be applied only in "extraordinary circumstances." *See Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003) (citing *Schlup*, 513 U.S. at 321-22).

LeClaire has not made the required cause and prejudice showings.  Nor does he urge the Court to excuse his procedural defaults on the basis of a fundamental miscarriage of justice.  Indeed, he admitted years after trial that he had lied to his attorney about the cause of the child's death.  *In re LeClaire*, 2009 WL 427336, at *2.  Given this admission, and in light of the chorus of experts countering his initial account about how the child died, there is little support for a claim that counsel's behavior led to a fundamental miscarriage of justice.

For these reasons, LeClaire should not be relieved of his default, and his unexhausted claims of ineffective assistance of counsel should be DENIED.

## VI.    Sixth Amendment Claim

LeClaire's final claim is that the trial court relied on factors not submitted to a jury when it sentenced him to life in prison, thereby violating his rights under the Sixth Amendment.  LeClaire bases his argument upon the U.S. Supreme Court's holding in *Blakely v. Washington*, 542 U.S. 296, 310 (2004).  LeClaire also argues that he was not allowed to present mitigating factors to the probation officer prior to sentencing.

These arguments were presented in LeClaire's initial, *pro se* PCR petition, were withdrawn after counsel was appointed an amended the petition, and were never raised before the Vermont Supreme Court.  LeClaire has not shown cause and prejudice for his default, and makes no argument to support a finding of actual innocence.  Accordingly, for reasons discussed in Section V(B) of this Report and Recommendation, his claims

should be DENIED.

Furthermore, LeClaire's *Blakely* claim is misplaced.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  LeClaire was sentenced in 2001.  His direct appeal was decided in 2003.  *Blakely* was decided in 2004, and in 2005 the Vermont Supreme Court held that the state's homocide-sentencing scheme was unconstitutional because it allowed a sentencing court to increase the maximum sentence based upon facts not found beyond a reasonable doubt by a jury.  *State v. Provost*, 179 Vt. 337, 346-47 (2005).  In *State v. White*, 182 Vt. 510, 520 (2007), the Vermont Supreme Court determined that the rule announced in *Provost* was "not a watershed rule of criminal procedure," and thus would "apply retroactively only to cases on direct review."  Because LeClaire's direct appeal concluded prior to both the *White* and *Provost* decisions, he cannot avail himself of the change in the law.

## Conclusion

For the reasons set forth above, I recommend that the respondent's motion to dismiss (Doc. 6) be GRANTED, that LeClaire's petition for writ of habeas corpus (Doc. 1) be DENIED, and that this case be DISMISSED.

Dated at Burlington, in the District of Vermont, this 17th day of December, 2009.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* Local Rules 72(a), 72(c), 73; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(d).